# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2225

———————

Lulseged Gebrehiwot,

        Petitioner,

    v.

John Ashcroft, Attorney General,

        Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals.

———————

Submitted: April 16, 2004
Filed: June 29, 2004 (Corrected: 7/2/04)

———————

Before MORRIS SHEPPARD ARNOLD, MAGILL, and MURPHY, Circuit Judges.

———————

MAGILL, Circuit Judge.

Lulseged Gebrehiwot petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion an immigration judge's ("IJ") denial of his application for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we affirm the BIA's order of removal.

Gebrehiwot is a citizen of Ethiopia. He is ethnically Amhara and was raised in a region of Ethiopia consisting primarily of ethnic Oromos and Somalis. Gebrehiwot first came to the United States in 1981; he completed a master's degree in Agronomy at the University of Georgia and returned to Ethiopia in 1983. Upon

his return, he worked for the Mengistu government as a division head at the National Institute of Agricultural Research from 1983 to 1988 and from 1989 to 1990. Though he worked for the government, Gebrehiwot testified he did not belong to a political party, and apparently does not fear persecution based on his work for the Mengistu government. He returned to the United States in 1990 to obtain his Ph.D. in Agronomy. The terms of his program provided that he was to spend at least two years in Ethiopia following its completion so that his country might share in the benefit of his education. While Gebrehiwot was in the United Sates, the government of Ethiopia changed control during a violent period in the early 1990's, and the Ethiopian People's Revolutionary Democratic Front ("EPRDF") took power. The EPRDF renewed Gebrehiwot's passport and never demanded that he return to Ethiopia. Gebrehiwot completed the Ph.D. program at the University of Missouri in 1994. He testified that agronomists are in demand in Ethiopia; however, instead of returning, Gebrehiwot applied for asylum based on a fear of persecution due to his ethnicity and political beliefs.

Gebrehiwot testified to no political involvement while living in Ethiopia. Rather, his fear springs from his membership in various groups in the United States which protest the ethnic policies and human rights abuses of the EPRDF. To this end, Gebrehiwot became a member of the following groups: the All-Amhara Relief and Development Association, which is the Western version of the Ethiopian All-Amhara People's Organization ("AAPO"); the Coalition of Ethiopian Democratic Forces; and the Ethiopian National Congress.

Gebrehiwot does not claim that he has ever been persecuted in Ethiopia. He argues instead that the EPRDF is hostile to Amharas, and will persecute him because of his ethnicity and criticism of its divisive ethnic policies. In support of his persecution claim, Gebrehiwot cites the following factors: in 1991, his family was forced from their land by armed members of the Oromo People's Democratic Organization who gave the land to ethnic Oromos; in 1992, his half brother was

arrested and detained for three months because he was Amhara; in 1994, his cousin was killed by government forces because he was Amhara and a member of the AAPO; his brother and sister were fired because they are Amhara; in 1995, his property, which he had not visited in more than five years, was confiscated by the government without compensation because he was considered a chauvinist Amhara and a defector; his wife, Azeb Yigalem, was arrested and imprisoned by the government because of her AAPO activities in 1993, twice in 1995, and in 1997.[1]

The IJ denied Gebrehiwot's application for asylum and withholding of removal. It relied heavily on a Department of State Country Report ("Report") and a Profile of Asylum Claims and Country Conditions ("Profile") in holding that Gebrehiwot had not established a well-founded fear of future persecution.

Because the BIA affirmed the IJ without opinion, we review the IJ's decision directly as the final agency action. Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003). We will affirm an IJ's denial of asylum if it is supported by substantial evidence on the record as a whole. Menendez-Donis v. Ashcroft, 360 F.3d 915, 918-19 (8th Cir. 2003). In order to overturn the IJ's findings, we would have to conclude "not only that a persuasive case has been made for the opposite position, but that any reasonable fact-finder would be persuaded by it." Id. at 918; see also 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

Gebrehiwot bears the burden of establishing a well-founded fear of persecution on account of his ethnicity or political opinion. 8 U.S.C. § 1101(a)(42)(A). Any such fear must be objectively reasonable, meaning that he was required to present "credible, direct, and specific evidence of facts that show a reasonable person in [his]

---

[1]We know little more about these alleged events than the bare bones we state here. Gebrehiwot's brief and hearing transcript do not flesh out the facts.

position would fear persecution if returned to" Ethiopia. <u>Ghasemimehr v. INS</u>, 7 F.3d 1389, 1390 (8th Cir. 1993).

The record does not contain sufficient evidence to compel a conclusion contrary to that reached by the IJ. Nor can we say that the evidence in the record which supports the IJ's determination is insubstantial. The IJ considered Gebrehiwot's testimony concerning the reasons he feared persecution in light of the State Department documents and found the latter more convincing. We have previously held that an IJ "'reasonably may rely upon the State Department's assessment of current country conditions as they relate to the likelihood of future persecution, given the Department's expertise in international affairs.'" <u>Navarijo-Barrios v. Ashcroft</u>, 322 F.3d 561, 564 (8th Cir. 2003) (quoting <u>Toptchev v. INS</u>, 295 F.3d 714, 722 (7th Cir. 2002)); <u>see also</u> <u>Kayembe v. Ashcroft</u>, 334 F.3d 231, 235-37 (3d Cir. 2003) (holding that a Country report provided substantial evidence for affirming a denial of asylum based on fear of future persecution because of ethnicity); <u>Gonahasa v. United States INS</u>, 181 F.3d 538, 542 (4th Cir. 1999) ("In most cases, a State Department report provides such substantial evidence. Absent powerful contradictory evidence, the existence of a State Department report supporting the BIA's judgment will generally suffice to uphold the Boards' decision.").

The State Department documents were in many instances directly contrary to Gebrehiwot's thinly supported claims that Amhara supporters of the AAPO are being persecuted. The Profile states "we have seen no evidence that the [Federal Democratic Republic of Ethiopia] would harm or harass such persons as long as they renounce violence as a means of gaining their ends." R. at 512. The Profile similarly notes that members of the AAPO in Ethiopia are not arrested based on their membership alone, and are allowed to demonstrate and publish material. R. at 515. It contradicts Gebrehiwot's fear that, despite the value of his education to the country, the Ethiopian government is willing to persecute him because of his political activities abroad:

-4-

Adjudicator's may wish to bear in mind that the FDRE has consistently demonstrated its willingness to accept, without major repercussions, those members of COEDF . . . or other exile groups who renounce their affiliation with these groups and the violent aims of these groups. Almost all Ethiopian asylum applicants claim membership in one or the other of these exile groups . . . there are no reports in recent years of members of exile groups facing a trial or conviction solely for anti-government activities conducted overseas upon returning to Ethiopia.

R. at 510. Moreover, the government has encouraged expatriates to return to Ethiopia and participate in its political process should they renounce violence. R. at 509. The Profile similarity contradicts Gebrehiwot's claim of ethnic persecution: "there is no evidence that the FDRE is targeting ethnic Amharas for mistreatment, as is often alleged by applicants." R. at 514. In light of the speculative nature of Gebrehiwot's fear, the bareness of many of his supporting allegations, and the State Department documents, we find that the IJ's decision was supported by substantial evidence.[2]

Accordingly, we deny the petition.

———————————————————

[2]Our holding on Gebrehiwot's asylum claim dooms his withholding of removal claim. An applicant must show eligibility for withholding by a clear probability, a higher standard than must be met for asylum. See, e.g., Chay-Velasquez v. Ashcroft, 367 F.3d 751, 755 (8th Cir. 2004).