# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-4094

———————

| | |
|---|---|
| Vitalik K. Boudaguian; Ofelia R. Boudaguian; Khristofor V. Boudaguian; Kristina V. Boudaguian, | * <br> * <br> * <br> * |
| Petitioners, | *   Petition for Review of an |
| | *   Order of the Board of |
| v. | *   Immigration Appeals. |
| | * |
| John D. Ashcroft, Attorney General of the United States, | * <br> * <br> * |
| Respondent. | * |

———————

Submitted: February 10, 2004
Filed: July 22, 2004

———————

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

———————

LOKEN, Chief Judge.

Vitalik Boudaguian and his wife Ofelia are ethnic Armenians who were born in Azerbaijan and who moved in 1982 to another republic of the Soviet Union, Latvia, after Vitalik completed his Soviet military obligation and received a degree from a college in Yerevan, Armenia. The Boudaguians' two children, Khristofor and Khristina, were born in Latvia. The four family members entered the United States from Latvia in 1995, overstayed their tourist visas, and applied for asylum and

withholding of removal, contending that, as Russian-speaking ethnic Armenians, they faced constant discrimination, mistreatment, and persecution by Latvians after Latvia declared its independence from the Soviet Union. See 8 U.S.C. §§ 1158(b)(1); 1231(b)(3).

The Immigration Judge (IJ) denied the Boudaguians asylum and withholding of removal and granted them voluntary departure. See 8 U.S.C. § 1229c(b). After the BIA dismissed their appeal of the IJ's decision, the Boudaguians moved to reopen. Treating the motion as one to reconsider and to reopen, the BIA denied the motion, concluding that it neither demonstrated error in the BIA's previous decision nor met the heavy burden governing the reopening of applications for asylum and withholding of removal. The Boudaguians petition this court for judicial review of the BIA's denial of their motion to reopen. We conclude the BIA did not abuse its discretion and deny their petition for review.

1. Much of the Boudaguians' brief on appeal is devoted to persuading us that the BIA erred in initially upholding the IJ's denial of asylum and withholding of removal. In Stone v. I.N.S., 514 U.S. 386, 398-401, 405-06 (1995), the Supreme Court held that Congress, in amending the Immigration and Nationality Act, intended to depart from the normal rule that the timely filing of a motion to reconsider tolls the time for appeal of the underlying order until the agency rules on the motion to reconsider. Therefore, an order denying relief from deportation (now called removal) is final when issued and must be appealed within the statutorily prescribed period. Following Stone, Congress substantially rewrote the statute in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. But the wording of the relevant judicial review provision is the same. Compare 8 U.S.C. § 1252(b)(6), with 8 U.S.C. § 1105a(a)(6) (1990). Accordingly, we lack jurisdiction to review the BIA's initial order because the Boudaguians did not file a timely petition for review of that order. See Raffington v. I.N.S., 340 F.3d 720, 724 (8th Cir. 2003). Our jurisdiction is limited to review of the BIA order denying the Boudaguians' motion to reconsider its

initial decision or to reopen the asylum proceedings. We review such orders for abuse of discretion. See 8 C.F.R. § 1003.2(a); Nativi-Gomez v. Ashcroft, 344 F.3d 805, 807 (8th Cir. 2003).

2. Before the BIA, the Boudaguians' motion to reopen primarily argued that the evidence previously submitted to the IJ established that they suffered past persecution and have a well-founded fear of future persecution in Latvia. Treating this part of the motion as a motion to reconsider, the BIA denied it "because the [Boudaguians] have not demonstrated any error in our decision of June 26, 2002, on the record then before us, upon consideration of the contentions in the motion."

The applicable regulation provides that a motion asking the BIA to reconsider an adverse decision "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). In reviewing the denial of a motion to reconsider, "we will find an abuse of discretion if the denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis (such as race)." Zhang v. I.N.S., 348 F.3d 289, 293 (1st Cir. 2003) (quotation omitted). This is not a case like De Jimenez v. Ashcroft, 370 F.3d 783, 790 (8th Cir. 2004), where the petitioner's motion to reconsider established that the BIA's prior decision had misapplied BIA precedent in refusing to consider petitioner's evidence. Here, the Boudaguians' motion simply reargued whether the evidence established the requisite persecution.

We decline the Boudaguians' invitation to consider whether the BIA's initial order was correct in deciding whether the agency's denial of a motion to reconsider was an abuse of discretion. This level of review would be contrary to the Supreme Court's decision in Stone and would encourage aliens to improperly prolong the removal process by filing motions to reconsider, instead of petitioning for immediate judicial review of an initial adverse decision. Thus, there was no abuse of discretion.

3.  The Boudaguians' motion to reopen also presented additional evidence supporting their claim that they are not eligible to become naturalized Latvian citizens, and tending to confirm that unknown Latvian assailants committed acts of violence on members of the Boudaguian family in 1994 and 1995.  The BIA treated this part of the motion as a motion to reopen.  The applicable regulation provides that a motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."  The motion may not be granted unless the new evidence "is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  The BIA denied the motion to reopen, explaining:

> We have considered the contentions in the present motion, including that the [Boudaguians] are ineligible for citizenship in Latvia.  With the motion, the respondents have forwarded materials pertaining to Latvian citizenship requirements and affidavits from two neighbors concerning an incident in which a smoke bomb was thrown at the [Boudaguians'] home for an unknown reason.  The [Boudaguians] also have resubmitted several items that we already evaluated in the context of the prior appeal . . . .  A motion to reopen is not a substitute for an appeal.  It is not to be used as an opportunity for a second effort at proving factual allegations.  By means of the assertions in the motion and the accompanying documents, the [Boudaguians] have failed to satisfy the heavy evidentiary burden relevant to reopening.

(Citations omitted.)

Motions to reopen are disfavored, especially in removal proceedings.  See Khalaj v. Cole, 46 F.3d 828, 834 (8th Cir. 1995).  On appeal, the Boudaguians argue that the BIA abused its discretion by refusing to consider new evidence that they are ineligible for Latvian citizenship.  We disagree.  First, the BIA expressly stated that it considered the new evidence. Second, citizenship issues were carefully considered by the IJ and by the BIA in the first appeal.  Newly independent Latvia faces serious

-4-

issues regarding the rights of long-standing permanent residents who are not ethnic Latvians, and whether those non-citizens will be eligible for Latvian citizenship. In its first decision upholding the IJ's findings that the Boudaguians did not suffer past persecution and did not prove a well-founded fear of future persecution in Latvia, the BIA observed that Vitalik Boudaguian "would be able to apply for Latvian citizenship starting in 2003." The motion to reopen did not establish that was an error of fact, only that the Boudaguians may not qualify for citizenship because, for example, they do not presently speak the Latvian language. As this evidence does not undermine the essential findings that the Boudaguians failed to prove the requisite well-founded fear of persecution, the BIA did not abuse its discretion in concluding that the Boudaguians "have failed to satisfy the heavy evidentiary burden relevant to reopening."

4. At oral argument, the Boudaguians requested reinstatement of the thirty-day period of voluntary departure granted by the BIA in its initial decision of June 26, 2002. The applicable regulation provides that the filing of a motion to reopen "shall not stay the execution of any decision made in the case . . . unless a stay of execution is specifically granted." 8 C.F.R. § 1003.2(f). As the BIA granted no such stay, the thirty-day voluntary departure period expired well before the Boudaguians filed this petition for judicial review. Assuming we have the authority under IIRIRA to reinstate an expired grant of voluntary departure, which we doubt, we decline to do so because the Boudaguians did not timely seek a stay from this court. See Rife v. Ashcroft, No. 03-2127, 2004 WL 1496971, at *8 (8th Cir. July 7, 2004).

For the foregoing reasons, we deny the Boudaguians' petition for review in all respects.

_____