# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1785

_____

| | |
|---|---|
| Tony Esenwah, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of an |
| v. | * Order of the Board |
| | * of Immigration Appeals. |
| John D. Ashcroft, Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

_____

Submitted: February 12, 2004
Filed: August 5, 2004

_____

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Tony Esenwah, a native and citizen of Nigeria, appeals from a Board of Immigration Appeals (BIA) order denying his motion for reconsideration of the BIA decision affirming the order of an Immigration Judge (IJ) denying Esenwah's claim for asylum and ordering him removed from the United States. We affirm the denial of his motion for reconsideration.

Esenwah, a member of the Ibo tribe and a Christian, was born in Bida, Nigeria, where Christians are a minority. Esenwah lived in Bida until 1970, when he was sixteen years old. At that point, tragedy struck: government soldiers took Esenwah,

his ten-year old sister, and his father from their home into the bush; Esenwah and his sister were blindfolded while the soldiers executed his father at gunpoint. Shortly thereafter, the soldiers released Esenwah and his sister, and Esenwah went to live with his maternal uncle in Ibadan, Nigeria. In 1981, Esenwah received a student visa and entered the United States. Esenwah never attended college, overstayed his visa, and in 1993 applied for asylum, claiming religious persecution. In turn, in 1998 the Immigration Service initiated removal proceedings. The IJ held a hearing in February 1999, denied Esenwah's asylum application, and granted him voluntary departure to the United Kingdom. In the event the United Kingdom were to fail to accept Esenwah, the IJ ordered Esenwah's removal to Nigeria. Esenwah appealed to the BIA, which in September 2002 affirmed the IJ's decision and dismissed Esenwah's appeal. Esenwah filed a timely motion for reconsideration, which the BIA denied. Esenwah appeals from the BIA decision to deny his motion for reconsideration, but has not appealed the BIA's original decision affirming the IJ's order. We have granted Esenwah's unopposed motion for a stay of removal during the pendency of this appeal.

This Court has jurisdiction to review all final orders of removal, including motions for reconsideration of a previous decision by the BIA. 8 U.S.C. § 1252 (b)(2) (2000); De Jimenez v. Ashcroft, 370 F.3d 783, 789 (8th Cir. 2004).[1] Despite the statutory grant of jurisdiction, the government urges that we do not have jurisdiction to review the claims raised in Esenwah's motion for reconsideration because any review of this motion would require us to review arguments identical to those made during the underlying asylum determination. The government argues that this type of review, when only a motion for reconsideration is before this Court, would violate the Supreme Court's decision in Stone v. I.N.S., 514 U.S. 386 (1995).

_____

[1]We note there is an exception for final orders of removal against aliens who are removable by reason of having committed certain criminal offenses; review of such orders is precluded by 8 U.S.C. § 1252(a)(2)(C) (2000).

The Supreme Court in <u>Stone v. INS</u> resolved a circuit split and held that a motion for reconsideration of a BIA decision affirming an IJ's denial of asylum did not extend the time for appealing the underlying decision to a federal court of appeals. 514 U.S. at 389-90. The Court held that the appeal of the BIA order affirming the IJ's order and the appeal of the denial of the motion for reconsideration must be treated as "two separate petitions filed to review two separate final orders." <u>Id.</u> at 405. The government would have us read <u>Stone</u> as requiring that we dismiss for lack of jurisdiction an appeal from the denial of a motion for reconsideration that alleges the same errors considered by the BIA in reaching its decision to affirm the denial of asylum when, as here, no appeal of the BIA's underlying asylum decision has been filed. The government argues that in these circumstances review of the denial of the motion for reconsideration would be an improper exercise of jurisdiction over the original order affirming the denial of asylum. We disagree with the government's strained reading of <u>Stone</u> and we reject the government's argument.

In the first place, Congress has vested us with jurisdiction to review appeals from BIA orders denying motions for reconsideration, and we are duty-bound to exercise that jurisdiction. <u>See</u> <u>New Orleans Pub. Serv., Inc.v. Council of New Orleans</u>, 491 U.S. 350, 358 (1989). No federal court, not even the Supreme Court, can or would find a lack of subject-matter jurisdiction with respect to matters as to which a federal statute confers such jurisdiction. Here 8 U.S.C. § 1252(b)(2) is the jurisdiction-conferring statute; this statute grants to the federal courts of appeals jurisdiction over "orders of removal." As <u>De Jimenez</u> explains, an order denying a motion for reconsideration is an order of removal. <u>De Jimenez</u>, 370 F.3d at 789. A secondary point to note in connection with the jurisdictional argument is that we review orders denying motions for reconsideration under the abuse-of-discretion standard. <u>Boudaguian v. Ashcroft</u>, No. 02-4094, 2004 WL 1630961, at *2 (8th Cir. July 22, 2004); <u>Perwolf v. INS</u>, 741 F.2d 1109,1110 (8th Cir. 1984). This standard is considerably more deferential than the ordinary administrative-law standard that governs our review of agency decisions. <u>See e.g.</u>, <u>Habtemicael v. Ashcroft</u>, 370 F.3d

774, 779 (holding on appeal of a BIA decision denying asylum that we review factual determinations for substantial evidence and legal determinations de novo). In contrast, the BIA abuses its discretion only when its decision "is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). Any other level of review would "encourage aliens to improperly prolong the removal process by filing motions to reconsider, instead of petitioning for immediate judicial review of an initial adverse decision." Boudaguian, 2004 WL at *2.

"A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1)(2004). By its very nature, a motion for reconsideration alleges defects of some sort in the underlying decision by the BIA. Though our review is only for abuse of discretion, a proper review under the abuse-of-discretion standard of denials of motions for reconsideration ordinarily requires some review of the underlying decision. A review of the denial of a motion for reconsideration does not mean the court has exercised jurisdiction over the BIA's underlying asylum decision. See De Jimenez, 370 F.3d at 789 ("[A]lthough we are not directly reviewing the BIA's order. . . , our review of the denial of the motion to reconsider may require us to consider the validity of that order."). The orders remain separate and distinct. See Stone, 514 U.S. at 405.[2]

---

[2]Our decision in Boudaguian v. Ashcroft, No. 02-4094, 2004 WL 1630961(8th Cir. July 22, 2004), is illustrative. In Boudaguian we found the BIA did not abuse its discretion in denying a motion for reconsideration that raised arguments identical to those considered in the original asylum determination. We did not dismiss the appeal for lack of jurisdiction, but rather held that the abuse-of-discretion standard was necessary to preserve the distinct nature of the appeal of a denial of a motion for

We now turn to the substance of Esenwah's appeal. The first, and determinative, claim we address is Esenwah's argument that the BIA abused its discretion when it did not revisit its previous determination that Esenwah had not suffered persecution based on a statutorily protected ground. In order to qualify for a discretionary grant of asylum, the claimant must show he meets the statutory definition of "refugee" under 8 U.S.C. § 1101(a)(42)(A), which states that a refugee is a person who is unable or unwilling to return to his or her country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." See also, 8 U.S.C. § 1158(b)(1) (2004) (allowing the Attorney General to grant asylum to refugees). In denying asylum, the IJ held that Esenwah failed to show that the government soldiers executed his father because of his religion. The IJ found that Esenwah himself testified that his father's killing was likely an offshoot of Nigeria's Biafran civil war in 1970. (Oral Decision of the Immigration Judge, at 6); see Feleke, 118 F.3d at 598 (a showing of political unrest and ethnic conflict is not enough to show particularized persecution). The BIA specifically noted this finding of the IJ in the BIA's affirmance of the denial of asylum and in its subsequent refusal to reconsider its ruling. The decision by the BIA is well-articulated, based on the record, evinces no discriminatory intent, and does not distort any of Esenwah's claims. We therefore find that the BIA did not abuse its discretion in making the challenged determination.

Similarly, we reject Esenwah's claim that the BIA did not properly consider the possibility that Esenwah suffered persecution based on his tribal membership. The IJ made the observation that "[t]his killing could have been motivated by tribal hatreds or an individual soldier's decision to retaliate against Ibo tribesmen wherever they found them." (Oral Decision of the Immigration Judge, at 6). Aside from this

---

reconsideration from an appeal of an underlying denial of asylum. Boudaguian, 2004 WL 1630961at *3.

remark by the IJ, Esenwah offers no support for his tribal membership claim. Esenwah failed to develop this claim at the hearing before the IJ. We conclude that the BIA's finding that Esenwah had not provided a nexus between the persecution suffered and his tribal membership cannot be considered an abuse of discretion.

We need not reach Esenwah's other arguments, inasmuch as they are rendered moot by the lack of a nexus between the persecution Esenwah suffered and a statutorily protected basis. For example, without the requisite nexus Esenwah does not fit the statutory term "refugee" and thus is not eligible for a discretionary grant of asylum. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Similarly, without the requisite nexus, it is of no moment whether the BIA abused its discretion by failing to reconsider the finding that Esenwah would not suffer country-wide persecution, or by failing to recognize Esenwah's past persecution as entitling him to a grant of humanitarian asylum as found in Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

The order of the BIA denying the motion for reconsideration is affirmed.
_____