# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3014

_____

Jean Noel Fongwo,

               Petitioner,

        v.

Alberto Gonzales,[1] Attorney General
of the United States,

               Respondent.

\* Petition of Review from the Board
\* of Immigration Appeals.

_____

Submitted: September 16, 2005
Filed: December 9, 2005 (corrected December 21, 2005)

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Petitioner, who identifies himself as Jean Noel Fongwo, a native of Cameroon, applied for asylum, withholding of removal, and protection under the Convention Against Torture. An Immigration Judge denied his application, and petitioner filed a motion to reopen and reconsider. The IJ denied the motions, and the BIA affirmed

_____

[1] Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

that decision without opinion. Petitioner challenges the agency's decision on the motions to reopen and reconsider, and we deny the petition for review.

I.

This case involves a dispute over the petitioner's identity. In the hearing before the immigration court, petitioner alleged that he fled Cameroon on account of his membership in the Social Democratic Front ("SDF") and the Southern Cameroon National Council, political organizations in that country. Petitioner arrived in the United States bearing a passport with the name "Jean Tamu," as well as a birth certificate and national identity card in the name of "Jean Tamu." While he was processed by an officer at the Miami airport, however, petitioner stated that his name is actually "Jean Noel Fongwo." Petitioner also entered the United States with two SDF membership cards and two letters bearing the name "Jean Noel Fongwo."

Petitioner testified at the administrative hearing that his name is "Jean Noel Fongwo," and that he never used the name "Tamu." He said that when he arrived in the United States, he presented authorities with a false passport in which a photograph of himself had been substituted for the real "Jean Tamu." The government, however, presented evidence from a forensic document examiner that the passport was consistent with genuine Cameroon passports on file at the Immigration and Naturalization Service, that no alterations had been made to it, and that the photo had not been switched. The examiner also determined that the birth certificate (bearing the name "Tamu"), the national identity card (bearing the name "Tamu"), and the SDF cards (bearing the name "Fongwo") were consistent with genuine documents on file, and there was no evidence that the documents had been altered.

After granting petitioner a continuance to gather further documentation regarding his identity (A.R. 285-89), the IJ eventually made an adverse credibility finding as to petitioner's claimed identity, concluding that the applicant was not "Jean

Noel Fongwo" but in fact "Jean Tamu." The court relied on forensic evidence that the passport, identity card, and birth certificate in the name "Tamu" were genuine. The court further observed that the name of petitioner's father was "Frederick Fongwo Tamu," and that petitioner's grandfather had "Tamu" in his name as well. The IJ gave little weight to a second birth certificate bearing the name "Fongwo," because it was not authenticated in accordance with 8 C.F.R. § 1287.6, and found that petitioner failed to present "objective, credible, and corroborating documentation" to show that he was actually "Jean Noel Fongwo." The IJ also was unpersuaded by the SDF letters, which she found to be vague, general, and lacking in detail, and gave little weight to the SDF cards in the name of "Fongwo," finding that "anybody can get an SDF card for approximately 50 cents."

In addition to determining that petitioner misrepresented his identity, the IJ questioned the credibility of petitioner's claim that he was a member of the SDF in Cameroon, because upon arriving in the United States, where freedom of speech is guaranteed, petitioner did not become involved in the SDF. The IJ concluded that petitioner's claim of persecution based on membership in the SDF was undermined further by the fact that his mother was a member of the SDF in Cameroon, and that she continued to live there without incident after petitioner departed in 1999. With regard to petitioner's overall claim for relief, the IJ noted that in the case of *Matter of O-D-*, 21 I&N Dec. 1079, 1082 (BIA 1988), the BIA held that "documents of identity that are deemed to be fraudulent then undermine and affect the credibility of the whole entire claim." The IJ discussed petitioner's claim that the government violated the confidentiality rules of 8 C.F.R. § 208.6(a) by disclosing the name "Fongwo" to officials of the Cameroon government in the course of making inquiries relevant to the asylum application. The IJ found no transgression because petitioner's true name was "Jean Tamu," and that name was not disclosed.

The IJ determined that because petitioner misrepresented his identity and submitted fraudulent documents in support of his claim, the application for asylum

-3-

was frivolous. Accordingly, the IJ barred petitioner from receiving benefits from the United States under the Immigration and Nationality Act. *See* 8 U.S.C. § 1158(d)(6).

Petitioner did not appeal the IJ's order to the BIA, but instead filed a motion to reopen and reconsider the IJ's decision, and to stay removal. The IJ denied the motions, and petitioner appealed to the BIA, which affirmed without opinion.

## II.

Petitioner claims that the IJ abused her discretion by denying his motions to reopen and reconsider.[2] Regarding his motion to reopen, petitioner claims that the IJ abused her discretion by refusing to consider new evidence not presented at the prior hearing. This new evidence included a Catholic Testimonial Book, a U.S. Peace Corps Certificate of Attendance, and a second Cameroon National Identity Card, all of which were issued to "Fongwo." Petitioner asserted in a sworn declaration that these documents were "not available" at the time of the prior hearing, because he had relied on the advice of his attorney, who did not ask him to make these documents available.

Motions to reopen deportation proceedings are particularly disfavored, as "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Motions to reopen must state new facts that are material to the outcome of the proceeding and were neither available nor discoverable at the prior hearing. 8 C.F.R. § 1003.23(b)(3).

---

[2]Where, as here, the BIA affirms without opinion, the IJ's decision becomes the final decision of the agency. 8 C.F.R. § 1003.1(e)(4). Accordingly, we review the IJ's decision as that of the BIA. *Gebrehiwot v. Ashcroft*, 374 F.3d 723, 725 (8th Cir. 2004). We lack jurisdiction to consider petitioner's claim that the BIA should have convened a three-member panel to review the IJ's decision. *Ngure v. Ashcroft*, 367 F.3d 975, 988 (8th Cir. 2004).

In other words, an IJ should grant motions to reopen only if the new evidence presented "could not by the exercise of due diligence have been discovered earlier." *Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002) (quoting *Matter of Coelho*, 20 I&N Dec. 464, 472 n.4 (BIA 1992)). We review the IJ's decision to deny petitioner's motion to reopen for abuse of discretion. *Doherty*, 502 U.S. at 323; *Feleke v. INS*, 118 F.3d 594, 597-98 (8th Cir. 1997).

The IJ concluded that petitioner's failure to provide the Catholic Testimonial Book, Peace Corps Certificate of Attendance, and National Identity Card at the prior hearing because of his attorney's advice did not render them new, unavailable, and undiscoverable, as required by § 1003.23(b)(3). This conclusion was not an abuse of discretion. Petitioner admitted in his sworn declaration that the documents existed at the time of the prior hearing, and his attorney's alleged advice to forego presentation of the documents does not mean that they were unavailable. Petitioner and his counsel made a decision not to produce the documents, and a motion to reopen is not designed to permit parties a second opportunity to select which evidence should be presented. Therefore, we reject petitioner's challenge to the denial of his motion to reopen.

In that portion of his motion that sought reconsideration of the initial decision, petitioner claimed that the IJ neglected certain testimony and failed to give sufficient weight to facts suggesting that he is "Jean Noel Fongwo." Petitioner also asserted that the IJ's initial decision failed to articulate fully the legal standard for determining that an application is frivolous, and failed to examine the totality of the evidence presented. Petitioner reasserted as well that the government breached his rights to confidentiality by disclosing the name "Fongwo" as part of inquiries made to the government of Cameroon. *See* 8 C.F.R. § 208.6(a).

Motions to reconsider are available to correct "errors of fact or law in the [IJ's] prior decision." 8 C.F.R. § 1003.23(b)(2). While a motion to reopen affords the court a second review of a case supported by new evidence, a motion to reconsider allows

the IJ to reassess her decision "in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *In re J-J-*, 21 I. & N. Dec. 976, 977 n.1 (B.I.A. 1997) (internal quotations omitted). "A motion for reconsideration must give the [BIA] a reason for changing its mind, something the tribunal has no reason to do if the motion merely republishes the reasons that had failed to convince the tribunal in the first place." *Strato v. Ashcroft*, 388 F.3d 651, 655 (8th Cir.2004) (internal quotations omitted).

We review the IJ's denial of a motion to reconsider for abuse of discretion *Esenwah v. Ashcroft*, 378 F.3d 763, 765 (8th Cir. 2004), which, in this context, means a decision that "was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis (such as race)." *Boudaguian v. Ashcroft*, 376 F.3d 825, 828 (8th Cir. 2004) (internal quotation omitted). This standard, more deferential than the substantial evidence standard that governs our direct review of BIA decisions, reflects a need to deter applicants from "improperly prolong[ing] the removal process by filing motions to reconsider, instead of petitioning for immediate judicial review of an initial adverse decision." *Id*. On a petition to review the denial of the motion to reconsider, we lack jurisdiction to consider the merits of the IJ's initial order denying petitioner's asylum claim, *id*. at 827, but we may review the underlying record, as necessary, to determine whether the IJ abused her discretion by denying the motion. *Esenwah*, 378 F.3d at 765.

We see no abuse of discretion here. The parties presented the IJ with a puzzling dichotomy: either (1) petitioner is actually "Jean Tamu," but claimed upon entry that his name was "Fongwo," and provided numerous fraudulent documents bearing the name "Fongwo," or (2) petitioner is in fact "Jean Noel Fongwo," but upon arriving in the United States submitted documents with the false name "Jean Tamu." The IJ reached the former conclusion after determining based on forensic testimony that official documents bearing the name "Tamu" were genuine and unaltered (contrary to petitioner's claim that the passport had been altered), while finding that documents

-6-

in the name of "Fongwo" were worthy of little weight. The IJ filed a 22-page decision that evaluated the numerous exhibits and witnesses presented during the hearing. Petitioner disagrees with the IJ's evaluation of the evidence, but it was permissible for the IJ to conclude that a motion to reconsider is not a proper vehicle simply to reargue the case. *Strato*, 388 F.3d at 655; *Boudaguian*, 376 F.3d at 828; *Esenwah*, 378 F.3d at 766 n.2. Petitioner could have sought review of the initial decision, and argued that the evidence compelled a conclusion contrary to the IJ's credibility determination, *see* 8 U.S.C. 1252(b)(4)(B), but he chose to forego that opportunity. Therefore, we conclude that the IJ did not abuse her discretion in denying the motion to reconsider.

The petition for review is denied.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. I would reverse the IJ's denial of petitioner's motion to reconsider whether he had filed a frivolous application. While there are inconsistencies in this record, none of them is so egregious as to merit forever barring Fongwo from applying for asylum-related relief in this country, which will be the ultimate effect of the majority's opinion.

I agree with the majority that the thrust of the IJ's denial of Fongwo's asylum claim "involves a dispute over the petitioner's identity." *Ante* at 2. I disagree, however, that the IJ was warranted in failing to reconsider her earlier ruling that Fongwo's application was frivolous because he had lied about his true identity. Fongwo has maintained since he arrived in the United States that he is Jean Noel Fongwo. He explained at his first interview with immigration authorities that he used the name Jean Tamu as an alias. Fongwo later clarified that his use of this alias and supporting documents in Tamu's name helped him escape from Cameroon. Had he used his true identity, his departure would have been more difficult due to his membership in opposition political organizations.

The IJ disbelieved Fongwo's claim largely due to the forensic evidence presented by the government. That evidence indicated that Fongwo's passport, national identity card, and birth certificate–all of which were in the name of Jean Tamu–may be genuine. Accordingly, the IJ opined that Fongwo must be lying about his identity, and was thus not credible.

After reviewing the record, I cannot agree with this conclusion. I accept that an asylum applicant may lie about his identity, but think it safe to assume he would only do so to benefit himself. According to the government, this petitioner had Tamu's birth certificate, national identity card, and passport, and thus he was truly Tamu. If so, absolutely no benefit would be gained by stating he was Fongwo. To the contrary, it would have benefitted the petitioner to maintain that he was Tamu, if that were the case. His asylum claim was based on Fongwo's alleged persecution and jailing for his membership in political organizations such as the Social Democratic Front. Recall, however, that the IJ discounted the SDF card indicating Fongwo's membership because she believed anyone could get one. Presumably, if SDF cards are easy to come by, the petitioner could have procured one in the name of Jean Tamu as well, if that is his true identity. Moreover, efforts to confirm whether Fongwo was jailed were unsuccessful. Assuming arguendo, therefore, that Fongwo may not have been persecuted on account of his political views, it would be senseless for petitioner to falsely claim he was Fongwo for asylum purposes. Given this record, I cannot accept the harsh result that attaches to a finding that Fongwo's application was frivolous, and would remand for reconsideration of that finding.

_____