# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2113
_____

Carlos Rivas-Quilizapa

*Petitioner*

v.

Loretta E. Lynch, Attorney General of United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: March 15, 2016
Filed: June 29, 2016
[Unpublished]
_____

Before WOLLMAN, BENTON, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Carlos Rivas-Quilizapa petitions for review of the order of the Board of Immigration Appeals (BIA) denying his motion to remand. We deny the petition.

Rivas-Quilizapa, a native and citizen of El Salvador, entered the United States in 1999 without being inspected or admitted. He was granted Temporary Protected Status from 2000 until approximately 2004 or 2005 at which point his status lapsed. Rivas-Quilizapa married Michelle Marie Stewart, a United States citizen, in July 2007. The two separated in 2008, but they have not sought a divorce because they lack funds to do so. Rivas-Quilizapa and Stewart have one child together, a son who is eleven years old and a United States citizen.

In October 2010, the Department of Homeland Security (DHS) initiated removal proceedings against Rivas-Quilizapa under 8 U.S.C. § 1182(a)(6)(A)(i), alleging that he had entered the United States without being admitted or paroled. A hearing was conducted in October 2011, during which the immigration judge (IJ) asked Rivas-Quilizapa, "If you had to leave the United States, are you willing to go back to El Salvador?" to which Rivas-Quilizapa responded, "If I had no other options, yes, but I do have my child here." The IJ found Rivas-Quilizapa to be removable and granted voluntary departure. After Rivas-Quilizapa secured counsel, the proceedings were reopened to allow him to apply for cancellation of removal. A hearing was held in October 2012, at which Rivas-Quilizapa testified that if he were to return to El Salvador, neither Stewart nor his son would be able to visit him because "there is a lot of violence," and that "especially where I live, there [are] a lot of gangs." He further testified that he would not be able to provide Stewart with financial support because "[t]here is barely no work over there, and if I went back, well, I wouldn't be able to work and there is a lot of violence." The IJ denied the application, finding that Rivas-Quilizapa had not demonstrated the requisite "exceptional and extremely unusual hardship to his qualifying relatives."

Rivas-Quilizapa appealed to the BIA and also filed a motion to reopen his removal proceedings, which the BIA construed as a motion to remand under 8 C.F.R.

§ 1003.2(c)(4). Rivas-Quilizapa argued that remand was appropriate because, as relevant here, the IJ failed to inform him of his right to apply for asylum, withholding of removal, and protection under the Convention Against Torture, in violation of his due-process rights. He also claimed that remand was appropriate because of changed conditions in El Salvador, asserting that the country "is now overrun by retaliating drug cartels[ and] gang members," and that the gangs were targeting members of a church youth group, Grupo Juvenil, of which he was a member. In an affidavit in support of his motion, he stated,

> I just recently learned from my friends and family still living in El Salvador, that several members of my Church youth social Grupo Juvenil have been targeted and killed because they attended Barrio San Martin de Porro Fuente Church, with Pastor Geronimo and that many of them were members of the same Grupo Juvenil club that I was a member of.

He alleged that friends of his had been killed after returning to El Salvador and that those murders remained unsolved. He specifically referred to the May 2010 murder of his friend Antonio Melendes, who Rivas-Quilizapa believed had been murdered because he would not sell drugs for a criminal organization named the Salvastretha gang. Rivas-Quilizapa's affidavit did not, however, mention whether those friends who had been murdered had any connection with Grupo Juvenil. He asserted that he had been targeted by the Salvastretha gang in 1999, when he "refused to be recruited into the organization and would not sell drugs for them." He stated that his uncle, Fredis Rivas Quilizapa, who had been removed to El Salvaldor, in 2010, "ha[d] been experiencing the Salvastretha threats on his life every day," and that he had nearly been killed by the gang three months earlier "because he refused to sell drugs for that gang." Rivas-Quilizapa's affidavit did not mention whether his uncle had been involved with Grupo Juvenil. Rivas-Quilizapa's motion also included an affidavit from his cousin, Fabian Abarca Centano, who stated that members of Grupo Juvenil

-3-

had been targets of gang violence, but he did not provide details of any specific incidents.

The BIA dismissed Rivas-Quilizapa's appeal and denied his motion to remand. Rivas-Quilizapa petitions for review, arguing that his due-process rights were violated when the IJ failed to inform him of the availability of alternative forms of relief and that the BIA abused its discretion when it concluded that he had failed to present new facts that were not available during the original removal proceedings.

II.

A. Due Process

The Fifth Amendment guarantees due process in removal proceedings. <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993). We review *de novo* due-process challenges to removal proceedings. <u>Alva-Arellano v. Lynch</u>, 811 F.3d 1064, 1066 (8th Cir. 2016). "To establish a due process violation in a removal hearing, an alien must demonstrate both a fundamental procedural error and prejudice." <u>Id.</u> The regulations governing removal proceedings require an IJ to inform an alien of "his . . . apparent eligibility" for certain forms of relief and to inform the alien of his eligibility for asylum or withholding of removal "[i]f the alien expresses fear of persecution or harm upon return to any of the countries to which the alien might be removed." 8 C.F.R. § 1240.11(a)(2), (c)(1)(i); <u>see also</u> <u>id.</u> § 1240.49(c)(2)(i). While a violation of those regulations could constitute a fundamental procedural error, a violation occurs only if "the circumstances of the case reflect the alien's 'apparent eligibility' for the particular form of relief at issue," or if "the alien 'expresses fear of persecution or harm upon return to any of the countries to which the alien might be removed.'" <u>Alva-Arellano</u>, 811 F.3d at 1066 (citations omitted).

Rivas-Quilizapa argues that the statements he made during his October 2012 cancellation-of-removal hearing constituted expressions of fear and that the IJ's failure to inform him of his eligibility for asylum following those statements violated his due-process rights. We disagree. When asked whether his son would be able to visit him in El Salvador, Rivas-Quilizapa responded that he would not "[b]ecause over there, there is a lot of violence. Where I live, especially where I live, there [are] a lot of gangs and you just can't." In response to another question about whether he would be able to provide financial support to Stewart if he were to be removed to El Salvador, he responded that he could not, saying, "Well, . . . I live in Canton. There is barely no work over there, and if I went back, well, I wouldn't be able to work and there is a lot of violence." Given the questions that Rivas-Quilizapa was responding to, neither of his statements that "there is a lot of violence," indicated that he was afraid to return to El Salvador, but merely that if he returned there, he would be unable to see his son or provide financial support to his estranged wife. Moreover, in light of his statement during the October 2011 hearing that he could return to El Salvador "[i]f [he] had no other options," his statements did not indicate that he feared persecution or harm upon return to El Salvador. Because none of the statements Rivas-Quilizapa made during his removal proceedings indicated an "apparent eligibility" for asylum, withholding of removal, or relief under the Convention Against Torture, we conclude that the IJ was under no duty to inform him of those forms of relief and thus committed no fundamental procedural error in not doing so.

## B. Motion to Remand

"We review the BIA's refusal to reopen and remand under the highly deferential abuse-of-discretion standard." Alva-Arellano, 811 F.3d at 1066. Under 8 C.F.R. § 1003.2(c)(1), "[a] motion to [remand] shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." In determining whether facts were available or discoverable at the prior hearing, we consider whether

the new evidence "could not by the exercise of due diligence have been discovered earlier." Alva-Arellano, 811 F.3d at 1067 (quoting Fongwo v. Gonzales, 430 F.3d 944, 947 (8th Cir. 2005)).

Rivas-Quilizapa contends that information about gangs targeting members of Grupo Juvenil was not available or discoverable at the initial proceedings because neither the IJ nor Rivas-Quilizapa's former attorney informed him about asylum, withholding of removal, or Convention Against Torture relief. Such failure-to-advise claims do not excuse an alien's failure to present facts that were previously discoverable through the exercise of due diligence, however, in the absence of a due-process violation or ineffective assistance of counsel. See id. at 1067. As discussed above, no due-process violation occurred, and Rivas-Quilizapa has not raised an ineffective-assistance-of-counsel argument.

Moreover, Rivas-Quilizapa's motion to remand and the affidavits submitted in support thereof do not present facts that were not discoverable at the time of his cancellation-of-removal hearing. Although the documents state generally that the threats and violence against members of Grupo Juvenil began between three and six months before Rivas-Quilizapa submitted his asylum application, the documents discuss incidents of threats and violence against Rivas-Quilizapa and friends that occurred in 1999 and 2010, well before Rivas-Quilizapa's removal proceedings began, and thus were facts that he could earlier have discovered through the exercise of due diligence. Accordingly, the BIA did not abuse its discretion in denying the motion for remand.

The petition for review is denied.

_____

-6-