# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————————

No. 05-2753

————————————

| | | |
|---|---|---|
| Genet Hailemichael, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Petition for Review of an Order of |
| Alberto Gonzales, Attorney | * | the Board of Immigration |
| General of the United States of | * | Appeals. |
| America, | * | |
| | * | |
| Respondent. | * | |

————————————

Submitted: April 17, 2006
Filed: July 21, 2006

————————————

Before MURPHY, MELLOY and GRUENDER, Circuit Judges.

————————————

GRUENDER, Circuit Judge.

In September 2000, an immigration judge ("IJ") granted petitioner Genet Hailemichael's asylum application. After the initial proceedings and grant of asylum, the Department of Homeland Security ("DHS")[1] conducted an investigation of

---

[1]The Immigration and Naturalization Service ceased to exist on March 1, 2003, and its functions were transferred to DHS. *See* Homeland Security Act of 2002, Pub. L. No. 10-296, 116 Stat. 2135 (Nov. 25, 2002). This opinion refers to the INS and

Hailemichael's claim. Based upon evidence it discovered during that investigation, DHS asked the IJ to reopen removal proceedings against Hailemichael and to terminate Hailemichael's asylum, claiming that Hailemichael committed fraud during the initial proceedings. The IJ granted DHS's motion, terminated the earlier grant of asylum and eventually ordered Hailemichael removed. The IJ also denied an application for adjustment of status that Hailemichael filed after the IJ terminated her asylum. The Board of Immigration Appeals ("BIA") affirmed both orders, commenting only upon the IJ's order denying Hailemichael's application for adjustment of status.

Hailemichael petitions for review, claiming that the IJ should not have reopened proceedings or terminated her asylum and that, in any event, Hailemichael was entitled to adjustment of status. While we lack jurisdiction to entertain Hailemichael's arguments as to adjustment of status, we grant the petition based upon deficiencies in the IJ's decisions to reopen proceedings and terminate Hailemichael's asylum.

## I.   BACKGROUND

### A.   Order Granting Asylum

In her claim for asylum, Hailemichael never alleged past persecution. Instead, she sought asylum because she feared persecution on account of her political opinion if she returned to Ethiopia. Hailemichael and her husband had been politically active in support of Ethiopia's Mengistu government, which Ethiopia's current government overthrew in the early 1990s.

DHS as "DHS."

Among other bases for her fear, Hailemichael testified about her political activities and her husband's and father's politically-motivated imprisonment in Ethiopia. Relying upon Hailemichael's testimony and "numerous exhibits containing country information regarding the respondent," the IJ found that Hailemichael possessed a well-founded fear of persecution. As a result, in September 2000, the IJ granted Hailemichael asylum.

## B. Post-Asylum Procedural History and Termination of Asylum

In November 2000, approximately two months after the IJ granted Hailemichael asylum, DHS moved to reopen removal proceedings against Hailemichael and to terminate the grant of asylum. Based upon an investigation that it began after the IJ granted Hailemichael asylum, DHS claimed it had discovered that Hailemichael's application was fraudulent. According to DHS, contrary to Hailemichael's asylum application and hearing testimony, her husband was not imprisoned in Ethiopia. Hailemichael opposed the motion to reopen.

In support of its motion to reopen, DHS attached letters from DHS to the United States embassy in Ethiopia and the embassy's responses. The letters from DHS sought information on most of Hailemichael's claims, including her claim that her father died in 1998, that her children applied for visas to come to the United States and that her husband had been imprisoned. DHS also asked the embassy to investigate the authenticity of a warrant for Hailemichael's arrest that Hailemichael introduced in support of her application. The embassy's investigation indicated that, just as Hailemichael had testified, her children had applied for visas to come to the United States. The embassy was unable to verify or refute most other portions of Hailemichael's testimony. The embassy stated, however, that it had contacted a prison official in Ethiopia and that the prison official claimed that his prison had never held Hailemichael's husband. The embassy also located a witness who allegedly

-3-

stated that she purchased a home from Hailemichael's husband in 1995 (a year in which, according to Hailemichael's testimony, Hailemichael's husband should have been in jail). According to the embassy, that same witness claimed that Hailemichael's husband "is a businessman in Addis Ababa." The witness was unwilling, however, to sign a sworn statement. The embassy also turned up a document from the Ethiopian government indicating that Hailemichael's husband had been cleared of at least one criminal charge in 1993.

Based solely upon the information provided by DHS and without a hearing, the IJ granted DHS's motion to reopen removal proceedings and terminated Hailemichael's asylum. Hailemichael subsequently moved the IJ to reconsider, but the IJ refused. Having terminated the prior grant of asylum, the IJ then held hearings on the asylum application in March and August 2001, during which Hailemichael introduced additional testimony and documents. Hailemichael testified that she did not know that her husband had been released from prison when she testified at the initial hearing. She also asserted that it was the Ethiopian government's practice to release and reimprison its enemies and that her husband had likely been reimprisoned. Hailemichael also offered the testimony of two witnesses who testified that they were on the telephone with Hailemichael when she learned her husband had been released. They testified that Hailemichael was genuinely shocked.

In February 2002, the IJ reversed her earlier decision and denied Hailemichael's application for asylum. Contrary to her first opinion, the IJ now found Hailemichael "to be not credible for many reasons." In the course of her decision to deny asylum, the IJ discounted Hailemichael's proffered evidence in favor of the evidence that DHS gathered in its post-grant investigation. She also reversed a number of holdings and findings from her opinion granting asylum, many of which were logically unrelated to the issue of Hailemichael's husband's imprisonment or her credibility.

Hailemichael appealed to the BIA. However, during the pendency of her appeal, Hailemichael's visa number became current. She therefore moved the BIA to remand her case to the IJ so that she could seek adjustment of status. The BIA remanded the case to the IJ in December 2003. Hailemichael sought adjustment of status because her sister (a United States citizen) and mother (a legal permanent resident) reside in the United States, claiming that Hailemichael's deportation would be an extreme hardship on her elderly mother, as Hailemichael's mother was in ill health and relied upon Hailemichael for medical care. In June 2004, the IJ took testimony concerning Hailemichael's application for adjustment of status and waiver of any fraud finding to allow that adjustment. Less than a month later, the IJ denied Hailemichael's application for adjustment of status and waiver. On that same date, the IJ issued a supplemental order wherein she made an explicit finding (for the first time) that Hailemichael committed fraud in connection with her application for asylum. Hailemichael moved the IJ to reconsider the denial of her application for adjustment. However, in August 2004, the IJ issued another opinion in which she refused to reconsider the application.

Hailemichael subsequently appealed the IJ's denials of asylum, adjustment of status and waiver. In June 2005, the BIA dismissed Hailemichael's appeal and adopted and affirmed the IJ's February 2002 and June 2004 orders denying Hailemichael all relief, as well as the August 2004 order refusing to reconsider the application for adjustment. Hailemichael timely petitioned for review.

## II.    DISCUSSION

Hailemichael contends that her asylum proceedings should not have been reopened; that the IJ impermissibly shifted the burden of proof to Hailemichael when deciding whether to terminate Hailemichael's asylum; and that, in any event, the IJ should have adjusted Hailemichael's status. We address each issue in turn.

-5-

## A. DHS's Motion to Reopen and Terminate Asylum

Hailemichael argues in her petition that the IJ committed a host of procedural errors when reopening, chief among them that the IJ reopened based upon evidence offered by DHS that was available and capable of discovery prior to Hailemichael's asylum hearing. Hailemichael also argues that the IJ impermissibly shifted the burden of proof on the fraud issue from DHS to Hailemichael and that there was insufficient evidence upon which to determine that Hailemichael committed fraud in connection with her asylum application.

### 1. Reopening of Removal Proceedings

This Court reviews the decision to reopen proceedings for an abuse of discretion. *Haider v. Gonzales*, 438 F.3d 902, 906 (8th Cir. 2006). "An abuse of discretion occurs when the BIA's decision is without rational explanation, departs from established policies . . . or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." *Id.* (quotation omitted). Because the BIA adopted the IJ's opinion concerning the decision to reopen, we review the IJ's opinion for an abuse of discretion. *Reyes-Morales v. Gonzales*, 435 F.3d 937, 941 (8th Cir. 2006).

The Code of Federal Regulations dictates when a motion to reopen may be granted. The Code provides in relevant part:

(b) Before the Immigration Court—

(1) In general. An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless

-6-

jurisdiction is vested with the Board of Immigration Appeals. Subject to the exceptions in this paragraph and paragraph (b)(4), a party may file only one motion to reconsider and one motion to reopen proceedings . . . . A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on or before September 30, 1996, whichever is later . . . . **The time and numerical limitations set forth in this paragraph do not apply to motions by the Service in removal proceedings pursuant to section 240 of the Act. Nor shall such limitations apply to motions by the Service in exclusion or deportation proceedings, when the basis of the motion is fraud in the original proceeding** or a crime that would support termination of asylum in accordance with § 208.22(e) of this chapter.

***

(3) Motion to reopen . . . . A motion to reopen will not be granted unless the Immigration Judge is satisfied that **evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing** . . . .

8 C.F.R. § 3.23 (2000) ("Reopening or Reconsideration Before the Immigration Court") (emphases added).

The parties' readings of § 3.23 differ significantly. Hailemichael contends that, even if DHS is exempted from the subsection (b)(1) time and numerical limitations, it is still subject to the subsection (b)(3) requirements that the proffered evidence be previously unavailable and incapable of discovery and presentation at the former hearing. DHS apparently contends that it is exempt from all the regulation's limitations on reopening where it seeks to reopen for fraud, including the subsection (b)(3) requirements that the evidence be material and previously unavailable and incapable of discovery or presentation at the initial hearing.

-7-

The plain language of the regulation refutes DHS's argument. The regulation clearly exempts DHS from the "time and numerical limitations set forth in this paragraph" in removal proceedings and the same "limitations . . . in exclusion or deportation proceedings, when the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum." § 3.23(b)(1). However, no part of the regulation exempts DHS from the requirement that a party seeking to reopen proceedings must show that the evidence it offers "was not available and could not have been discovered or presented at the former hearing." § 3.23(b)(3).

It is also clear that the IJ presumed that the subsection (b)(3) requirements apply to DHS motions to reopen. Accordingly, even if we somehow determined that the regulation is ambiguous, we would defer to the IJ's interpretation of the regulation, unless it were "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Univ. of Iowa Hosps. & Clinics v. Shalala*, 180 F.3d 943, 950-51 (8th Cir. 1999) ("We accord substantial deference to an agency's interpretation of its own regulation."). As the IJ's interpretation comports with our own reading of the regulation's plain language, we do not find the IJ's interpretation to be plainly erroneous.

Applying the regulation to this case, if all the information and documents DHS relied upon in its motion to reopen were in fact available or capable of discovery before the initial hearing, then DHS merely attempted to reopen the proceedings based upon evidence it could have gathered previously but did not. Although we are sympathetic to DHS's argument that its workload requires it to employ its investigative resources cautiously, evidence that could have been gathered before the initial hearing does not meet the regulation's requirement that a motion to reopen be supported with evidence that was "not available and could not have been discovered or presented at the former hearing." § 3.23(b)(3); *cf. Matter of Guevara*, 20 I&N Dec.

238, 249 (B.I.A. 1991) (holding, in an application of a similar regulation, that DHS's motion to reopen should not be granted where "[t]he evidence it seeks to introduce was available but was deliberately withheld in the prior proceedings").

We therefore must review the IJ's holding with regard to whether the evidence was indeed unavailable and incapable of discovery in time for Hailemichael's asylum hearing. However, the entirety of the IJ's holding in this regard appears in one sentence: "This court rejects the respondent's argument that this evidence was available and could have been discovered and presented at the former hearing."

Unfortunately, the IJ's holding is insufficient to allow us to conduct any meaningful review of her decision. To allow us to review for an abuse of discretion, an IJ must describe her reasoning with sufficient specificity. "An administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Palavra v. INS*, 287 F.3d 690, 693 (8th Cir. 2002) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)). As a necessary corollary to this rule, the IJ is required to set forth her reasoning with sufficient specificity. *Ngure v. Ashcroft*, 367 F.3d 975, 984 (8th Cir. 2004) ("It is, of course, a basic principle of administrative law that where agency action is subject to judicial review, the agency must provide an adequate reasoned explanation of its decision."). And if that reasoning is insufficient, the case must be remanded for further consideration. *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990) ("[A] reviewing court cannot search the record to find other grounds to support the [agency's] decision. A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision." (footnote omitted)).

The IJ's summary dismissal in one sentence of all of Hailemichael's arguments concerning the prior availability of the proffered evidence falls far short of the requirements outlined above. Accordingly, we hold that the IJ abused her discretion when she reopened Hailemichael's removal proceedings. On remand, the BIA must reexamine the decision to reopen Hailemichael's removal proceedings and state explicitly on the record how the evidence adduced by DHS in support of its motion to reopen satisfied the requirements of subsection (b)(3). If the proffered evidence fails to meet these requirements, then Hailemichael's removal proceedings should not have been reopened. *See, e.g.*, *Fongwo v. Gonzales*, 430 F.3d 944, 947 (8th Cir. 2005) (rejecting petition for review from denial of motion to reopen where documents were available at the time of the former hearing); *Eta-Ndu v. Gonzales*, 411 F.3d 977, 987 (8th Cir. 2005) (rejecting petition where movant failed to show evidence was unavailable at the time of the former hearing).

## 2.    Termination of Asylum

In addition to Hailemichael's argument that the IJ improperly reopened her removal proceedings, she contends that the IJ impermissibly shifted the burden of proof to her on the issue of whether Hailemichael in fact committed fraud. Where an IJ reopens removal proceedings for the purpose of terminating an asylum grant, "the Service must establish, by a preponderance of the evidence" that there was "fraud in the alien's application such that . . . she was not eligible for asylum at the time it was granted." 8 C.F.R. § 208.23 (a), (b), (e) (2000).

Not every factual assertion in an applicant's testimony or application that turns out to be incorrect will support a finding of fraud. Instead, fraud requires that the applicant actually know that the factual assertion was false. Thus, for example, when an asylum applicant submitted a forged birth certificate in support of his asylum claim, the Seventh Circuit rejected an adverse credibility finding premised upon fraud

because the applicant's uncontradicted testimony was that his mother had given him the birth certificate and he believed it was real. *Kourski v. Ashcroft*, 355 F.3d 1038, 1040 (7th Cir. 2004) ("Without reason to believe that Kourski knew or suspected the forgery, however, proof that [the birth certificate] was a forgery wouldn't be evidence that he was lying."). The Seventh Circuit's reasoning comports with the traditional definition of fraud, *see, e.g.*, *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985) ("A common-law action for fraud requires a false representation of a material fact with knowledge or belief on the part of the defendant that the representation is false."), as well as the BIA's own long-standing interpretation of the term, *Matter of G-R-*, 7 I&N Dec. 508, 510 (B.I.A. 1957) ("Fraud consists of false representation or concealment of a material fact, made with knowledge of its falsity and with intent to deceive the other party . . . ."); *see also In re Tijam*, 22 I&N Dec. 408, 424 (B.I.A. 1998) ("Fraud requires that the respondent know the falsity of his or her statement . . . ."). Applying that law to this case, DHS could not meet its burden simply by showing that Hailemichael testified that her husband was imprisoned, even though he was not. Instead, DHS must show that Hailemichael knew at the time she testified that her husband was not, or had not been, imprisoned.

Here, the IJ improperly terminated Hailemichael's asylum based solely upon DHS's submission of documents in support of its motion to reopen, even though those documents contain no facts indicating that Hailemichael committed fraud. DHS's submission in support of its motion to reopen and terminate asylum simply indicated that Hailemichael's husband was, in fact, not in prison. Each of the documents and all the information gathered refers to a time period after Hailemichael had left Ethiopia, and nowhere in DHS's submission did it outline evidence indicating that Hailemichael knew her husband was not in prison. Moreover, having reviewed the subsequent proceedings, it is clear that the IJ never required DHS to prove by a preponderance of the evidence that Hailemichael committed fraud.

Accordingly, we hold that the IJ erred when she terminated Hailemichael's asylum. On remand, the BIA must determine whether the documents and evidence adduced by DHS in support of its motion to reopen tend to prove that Hailemichael committed fraud in her earlier application. To carry that burden, DHS must show that the evidence indicates not only that Hailemichael's husband had been released from prison (or had never been there), but that Hailemichael knew those facts at the time of her initial asylum hearing. If DHS's evidence supports such a finding, then the BIA must examine the evidence that Hailemichael subsequently adduced indicating that she was in fact unaware of her husband's release as of the time of her first asylum hearing. If DHS cannot prove fraud by a preponderance of the evidence, then Hailemichael's asylum never should have been terminated.[2]

---

[2]We have considered Hailemichael's argument that this Court should immediately order the BIA to grant Hailemichael asylum. Although this litigation has been quite protracted, this is due in part to Hailemichael's own motions for reconsideration and remand to seek adjustment of status. Because the delay is in part of Hailemichael's making and because the other aggravating factors addressed in *Mayo v. Ashcroft*, 317 F.3d 867, 874 (8th Cir. 2003), are not present in this case, we find Hailemichael's argument based upon *Mayo* unpersuasive. As we grant the petition for the reasons set forth above, we do not reach other arguments raised by Hailemichael in support of her petition.

Nevertheless, should the BIA determine that proceedings were properly reopened and that the initial grant of asylum was appropriately terminated, it must then proceed to analyze the IJ's post-reopening opinion denying asylum. While we express no opinion as to the appropriate outcome of that inquiry, we note the IJ's reversal of a number of findings from her initial opinion granting asylum where the reversals appear to be unrelated to the issue of Hailemichael's husband's imprisonment or even her credibility. For example, the IJ's second opinion found it implausible that the Ethiopian government would have renewed Hailemichael's passport in the United States even though the IJ found it reasonable in her first opinion; held that Hailemichael's children's continued safety in Ethiopia undercut her claim even though the IJ's first opinion found it did not; found that Hailemichael could safely have relocated inside Ethiopia even though the first opinion implicitly acknowledged she could not; and found that the change of government in Ethiopia

-12-

**B.      Adjustment of Status**

Hailemichael also argues that the IJ improperly denied her application for adjustment of status and waiver of the IJ's fraud finding for purposes of adjusting Hailemichael's immigration status.  Specifically, Hailemichael argued in her opening brief that "[e]ven if the Immigration Court's finding of fraud were correct, it should have been waived because the factors weighing in favor of adjustment and waiver are overwhelming.  The IJ and the Board erred in failing to properly weigh these factors."

This Court lacks jurisdiction to review discretionary denials of adjustment of status, unless the petition for review raises a constitutional claim or question of law.  8 U.S.C. § 1252(a)(2)(B)(i),(ii) and (a)(2)(D) (2006); *see also Suvorov v. Gonzales*, 441 F.3d 618, 621-22 (8th Cir. 2006); *Meraz-Rayes v. Gonzalez*, 436 F.3d 842, 842 (8th Cir. 2006) (per curiam).  It is clear from her opening brief that Hailemichael sought review of the IJ's weighing of the factors, an inherently factual question, rather than review of a legal holding.  Accordingly, we lack jurisdiction to consider her petition in this regard.[3]

_____

from the Mengistu government to the current one in fact made Hailemichael's fear less plausible because country conditions had changed even though the first opinion stated that it was this change of government that actually created Hailemichael's fear.

[3]Hailemichael's reply brief sought to raise questions of law concerning the IJ's denial of Hailemichael's request for adjustment of status and waiver (or to recast her opening brief's factual arguments as legal ones).  We view the issue presented in the opening brief as an inherently factual one, and we decline to consider additional arguments raised only in her reply brief.  *See Akeyo v. O'Hanlon*, 75 F.3d 370, 374 n.2 (8th Cir. 1996) ("As a general rule, we do not address arguments raised for the first time in a reply brief . . . .").

## III.  CONCLUSION

For the foregoing reasons, we grant the petition.  The BIA's order affirming the IJ's orders and opinions is vacated and the matter is remanded for further proceedings consistent with this opinion.

_____