# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1178

_____

| | | |
|---|---|---|
| Nikolay Vladimir Ivanov; | * | |
| Nora Mkrtychevna Ivanova, | * | |
| | * | |
| Petitioners, | * | |
| | * | On Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 20, 2006
Filed: April 24, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

We have considered the government's motion to amend our opinion in this matter and the Ivanovs' response to that motion. We now issue our revised opinion granting the government's motion in part and denying it in part. The opinion of the Court filed February 12, 2007, is vacated. The revised opinion is substituted for the earlier opinion, and is as follows.

On January 18, 2002, an immigration judge (IJ) granted the application for asylum filed by Nikolay Ivanov and Nora Ivanova (collectively, the Ivanovs).[1] On January 22, 2002, the Department of Homeland Security (DHS)[2] filed a motion to reopen the removal proceedings and terminate the grant of asylum based on information DHS obtained after the proceedings were closed that suggested that the Ivanovs had committed fraud in connection with their asylum application. The IJ granted the motion to reopen on February 12, 2002. After conducting additional hearings, the IJ denied the Ivanovs' application for asylum and other relief on July 14, 2004, and ordered the Ivanovs' removal. On December 20, 2005, the Board of Immigration Appeals (BIA) adopted and affirmed the IJ's opinion, rejecting the Ivanovs' argument that the IJ erred in granting DHS's motion to reopen. The Ivanovs petition for review, arguing that the IJ improperly reopened the removal proceedings and terminated their asylum.[3] We grant the petition.

The Ivanovs entered the United States on February 21, 1995, and applied for asylum in April 1995, claiming past persecution and fear of future persecution in the Republic of Georgia because of their non-Georgian nationalities. The 1995 application for asylum described Nikolay's nationality as Russian and Nora's as Armenian. The Ivanovs' application was denied, and they were placed in removal proceedings. On July 21, 1998, the Ivanovs appeared before an IJ and submitted a

---

[1]The Ivanovs' application for asylum initially included their son, Alexsandr. During the pendency of the Ivanovs' removal proceedings, however, Alexsandr attained the age of twenty-one years and his case was severed from his parents' case.

[2]The Homeland Security Act of 2002 created DHS, abolished the Immigration and Naturalization Service (INS), and transferred INS functions to DHS. Pub. L. No. 107-296, 116 Stat. 2135 (2002). Although INS initiated the case against the Ivanovs, because it has been abolished, we refer to the relevant agency as DHS.

[3]Because we grant the Ivanovs' petition based on their argument that the IJ abused his discretion in reopening the removal proceedings, we need not address the additional arguments raised in their brief.

revised application for asylum, claiming that they were persecuted in the Republic of Georgia not only because neither of the Ivanovs is Georgian but also because Nora's mother was Jewish and thus Nora is considered to be Jewish.

At a hearing before the IJ on January 15, 1999, the Ivanovs testified extensively regarding their claims of persecution, submitted numerous documents in support of those claims, and explained why they had failed to mention Nora's Jewish nationality in their original asylum application. On June 6, 2001, the IJ conducted another hearing at which a newly assigned DHS attorney requested additional copies of the birth certificates previously submitted to the IJ by the Ivanovs. In addition, the DHS attorney acknowledged that the agency's standard investigative procedures had apparently not been followed in the Ivanovs' case: "I don't know–from looking through the trial attorney notes it looks like the former Assistant District Counsel . . . handled this matter. I don't see that any documents were submitted for verification to either–normally these would be sent overseas for verification, but sometimes we send them to the F. B. I. I don't see that either of those things were done which I find a little distressing." Admin. R. at 275. The IJ continued the proceedings for three months in order to give DHS "an opportunity to check these documents." Id. at 278. Seven months later, on January 7, 2002, DHS faxed a request for verification of the Ivanovs' documents to the United States Embassy in Tbilisi, Republic of Georgia.

The IJ conducted a final hearing on Friday, January 18, 2002, at which he granted the Ivanovs' application for asylum. At the conclusion of the hearing, DHS reserved the right to appeal the IJ's decision, but at no point during the hearing did DHS move to continue the proceedings until the Embassy in Tbilisi responded to its request for verification of the Ivanovs' documents. Later that day, representatives from the Embassy in Tbilisi faxed a one-page response to DHS's request for verification of the Ivanovs' documents. The fax stated that a comparison of the Ivanovs' documents with the "original records at the civil archives" of the Republic

of Georgia confirmed the authenticity of all the Ivanovs' documents except Nora's birth certificate, which was "false." Id. at 700.

On Monday, January 22, 2002, DHS filed a motion to reopen the Ivanovs' removal proceedings "pursuant to 8 C.F.R. § 3.23(b)" based on the information DHS received from the Embassy regarding the authenticity of Nora's birth certificate. Id. at 699. In its motion to reopen, DHS stated that "reopening is warranted because there is probative evidence tending to prove that the [Ivanovs] submitted a fraudulent document and committed perjury in order to prove that . . . Nora Ivanov[] was of Jewish nationality." Id. The Ivanovs filed a response urging the IJ to deny DHS's motion to reopen "[b]ecause [DHS] has failed to show sufficient reason to reopen this case." Id. at 687. On February 12, 2002, the IJ granted DHS's motion to reopen, noting in its order that the motion "raise[d] serious issues which need to be addressed before the Court." Id. at 685.

After four additional hearings during which DHS and the Ivanovs submitted further documentary and testimonial evidence, on July 14, 2004, the IJ reversed his earlier decision and denied the Ivanovs' application for asylum. The Ivanovs appealed to the BIA, which adopted and affirmed the IJ's decision denying asylum. Concluding that the IJ did not abuse his discretion in reopening the Ivanovs' proceedings, the BIA noted that DHS had raised "serious issues" and that "the [IJ] has discretion to reopen cases even on his own motion at any time. 8 C.F.R. § 1003.23(b)(1)." BIA Decision, Dec. 20, 2005, at 2. The Ivanovs timely petitioned for review, arguing, inter alia, that the IJ improperly reopened their removal proceedings.

We review a decision to reopen removal proceedings for an abuse of discretion. INS v. Doherty, 502 U.S. 314, 323 (1992); Gebremaria v. Ashcroft, 378 F.3d 734, 738 (8th Cir. 2004). When the BIA not only adopts an IJ's decision to reopen removal proceedings but also adds its own reasoning, we review both decisions for abuse of discretion. See Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004). "An

-4-

abuse of discretion occurs if a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or . . . fails to consider all factors presented by the alien or distorts important aspects of the claim." Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). Motions to reopen removal proceedings are generally "disfavored because of the strong public interest in bringing" such proceedings to a conclusion. Gebremaria, 378 F.3d at 737.

Although the Code of Federal Regulations provides that an IJ may reopen removal proceedings "upon his or her own motion at any time," 8 C.F.R. § 1003.23(b)(1), if a motion to reopen is filed by either party, the regulations provide: "(3) Motion to reopen. . . . A motion to reopen will not be granted unless the [IJ] is satisfied that evidence sought to be offered is material and *was not available and could not have been discovered or presented* at the former hearing. Id. § 1003.23(b)(3) (emphasis added).[4] This standard is conjunctive. The evidence proffered in support of a motion to reopen removal proceedings must be material *and* both unavailable *and* undiscoverable at the time of an earlier hearing. See Hailemichael v. Gonzales, 454 F.3d 878, 883–84 (8th Cir. 2006). And as we stated in Hailemichael, "[N]o part of the regulation exempts DHS from the requirement that a party seeking to reopen proceedings must show that the evidence it offers 'was not available and could not have been discovered or presented at the former hearing.'" Id. at 883 (quoting 8 C.F.R. § 3.23(b)(3) (2000), later renumbered as 8 C.F.R. § 1003.23(b)(3)). Thus, if the evidence DHS submitted in support of its motion to reopen the Ivanovs' removal proceedings was available and discoverable and it could have been presented by DHS at an earlier hearing, then the motion to reopen was improperly granted.

---

[4]As noted above, the regulations permit an IJ to reopen removal proceedings at any time upon his or her own motion. 8 C.F.R. § 1003.23(b)(1). Such authority, however, was not employed in this case, and the fact that it was not employed was confirmed by DHS during oral argument. Because the removal proceedings were reopened upon DHS's motion, we construe the regulations applicable to such motions.

In support of its motion to reopen, DHS proffered a one-page fax from the United States Embassy in Tbilisi summarizing the results of a document search conducted in the civil archives located in Tbilisi. At DHS's request, representatives from the United States Embassy searched the records at the civil archives, comparing documents submitted by the Ivanovs in support of their asylum application with documents retained in the archives by Georgian authorities. DHS does not—and cannot—argue that the Ivanovs' documents were unavailable or undiscoverable until after the proceedings were closed with the IJ's January 18, 2002, grant of asylum. Nor does DHS argue that the records maintained in the civil archives against which the Ivanovs' documents were compared were unavailable or undiscoverable until after the proceedings were closed. Indeed, DHS acknowledged at the June 6, 2001, hearing that a document comparison of the type eventually conducted is standard agency procedure, but for unknown reasons, the investigation had not been completed in the Ivanovs' case. After acknowledging this oversight, DHS waited an additional seven months to request the document verification that resulted in the one-page fax DHS received from Embassy representatives eleven days after its request. In these circumstances, it appears that the evidence DHS submitted with its motion to reopen was not previously unavailable and it was not undiscoverable upon the exercise of reasonable diligence. Fongwo v. Gonzales, 430 F.3d 944, 947 (8th Cir. 2005).

DHS argues, and the IJ and the BIA concluded, that the evidence presented by DHS with its motion to reopen is material to the Ivanovs' asylum claim. We agree. The fact that the information is material, however, is not sufficient under the controlling regulations to permit reopening the removal proceedings. DHS has failed to establish that the information submitted in support of its motion to reopen was not only material, but was also unavailable *and* undiscoverable prior to the conclusion of the Ivanovs' removal proceedings. And it is clear from the record that DHS cannot establish that its evidence satisfied these further requirements. While we appreciate that DHS's workload compels the judicious use of its limited investigative resources, this fact cannot excuse the agency from complying with the regulatory requirements

-6-

for motions to reopen.  See Hailemichael, 454 F.3d at 883.  Therefore, we conclude that the IJ abused his discretion in granting DHS's motion to reopen the Ivanovs' removal proceedings.  See id. at 884 (holding that IJ abused her discretion in reopening removal proceedings and remanding case to IJ for specific finding that evidence proffered with motion to reopen was not only material, but was also unavailable and undiscoverable before final hearing); Fongwo, 430 F.3d at 947 (rejecting alien's petition for review from denial of motion to reopen where evidence was available at the time of earlier hearing); Eta-Ndu v. Gonzales, 411 F.3d 977, 987 (8th Cir. 2005) (same).

Although we conclude that the IJ abused his discretion by granting DHS's motion to reopen pursuant to § 1003.23(b)(3), we note, without deciding the point, that it appears DHS has the authority to initiate *new proceedings* at which it may seek termination of the Ivanovs' asylum based on their allegedly fraudulent asylum application.  See, e.g., Diallo v. Gonzales, 447 F.3d 1274 (10th Cir. 2006) (citing 8 C.F.R. § 1208.24(f) in affirming termination of asylum originally granted by BIA after new removal proceedings initiated by DHS); see also Johnson v. Ashcroft, 378 F.3d 164, 172 (2nd Cir. 2004) (concluding that BIA properly granted DHS's motion to reopen based on material, previously unavailable evidence of expungement of state conviction on which alien's removal was based, but erred in remanding to IJ for submission of evidence of additional convictions; such evidence could be presented in *new* removal proceedings).  Thus, it seems that if DHS establishes in new removal proceedings that material elements of the Ivanovs' asylum application were fraudulent, and as a result the Ivanovs were not eligible for asylum, then the Ivanovs' prior grant of asylum may be terminated.  In addition, as previously noted, an IJ "upon his . . . own motion" has authority to "reopen . . . any case in which he . . . has made a decision."  8 C.F.R. § 1003.23(b)(1); see id. § 1208.24(f) (stating that an IJ may reopen pursuant to § 1003.23 in order to terminate a grant of asylum).

For the foregoing reasons, we grant the petition. The BIA's decision affirming the IJ's order to reopen the proceedings and terminate the grant of asylum is vacated and the IJ's order granting asylum is reinstated.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

The court correctly recites our holding in *Hailemichael v. Gonzales*, 454 F.3d 878, 884 (8th Cir. 2006), that before an Immigration Judge grants a motion to reopen filed by the Department of Homeland Security, the IJ must find that the evidence proffered by the DHS was not available and could not have been discovered or presented at the former hearing. *See* 8 C.F.R. 1003.23(b)(3). In this case, in reviewing the IJ's decision, the BIA wrote that "[r]egarding the reopening grant, . . . the Immigration Judge has discretion to reopen cases even on his own motion at any time. 8 C.F.R. § 1003.23(b)(1). On the facts of this case, we find no abuse of his discretion by the Immigration Judge in reopening." (Add. at 40). Because we consider the reasoning of the BIA and the IJ together, *Madjakpor v. Gonzales*, 406 F.3d 1040, 1044 (8th Cir. 2005), it seems that the BIA's invocation of the IJ's authority to reopen on his own motion may have provided a basis to uphold the agency's action, *see Rana v. Gonzales*, 175 F. App'x 988, 993-94 (10th Cir. 2006), but the government expressly declined to rely on this authority when given an opportunity. *Ante*, at 5 n.4. Under those circumstances, and given the ambiguity in the agency's written decisions, I concur with the court that the IJ's decision to reopen the proceedings should not be upheld unless the evidence at issue was previously unavailable and undiscoverable. Rather than decide that question in the first instance, however, I would grant the petition for review and remand the case to the agency with directions to address whether the evidence considered on the motion to reopen satisfies the criteria of 8 C.F.R. § 1003.23(b)(3). *See Hailemichael*, 454 F.3d at 884; *see generally INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam).

———————————————————