# Matter of P-S-H-, Respondent

*Decided July 1, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

To terminate a grant of asylum pursuant to 8 C.F.R. § 1208.24 (2013), the Department of Homeland Security must establish, by a preponderance of the evidence, that (1) there was fraud in the alien's asylum application and (2) the fraud was such that the alien was not eligible for asylum at the time it was granted; however, proof that the alien knew of the fraud in the application is not required in order to satisfy the first criterion. *Matter of A-S-J-*, 25 I&N Dec. 893 (BIA 2012), clarified.

FOR RESPONDENT: Mitchell C. Zwaik, Esquire, Ronkonkoma, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: James B. Gildea, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, GREER, and WENDTLAND, Board Members.

PAULEY, Board Member:

In a decision dated September 27, 2011, an Immigration Judge terminated the respondent's grant of asylum and ordered him removed from the United States. The respondent has appealed from that decision. The Department of Homeland Security ("DHS") opposes the appeal. This case addresses the nature of the showing that the DHS must make in order for a grant of asylum to be terminated under 8 C.F.R. § 1208.24 (2013) on the basis of fraud in the application such that the alien was not eligible for asylum at the time it was granted. We review this question of law de novo and hold that (1) the DHS is not required to establish that an alien knew of the fraud in his or her asylum application in order to terminate a grant of asylum, but (2) the DHS must nevertheless separately prove that under the true facts, the alien was not eligible for asylum at the time it was granted. The respondent's appeal will be dismissed in part and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of India whose asylum application was granted by the Immigration Judge on May 6, 2003. While

the respondent's application for adjustment of status was pending, the DHS filed a motion to reopen proceedings to terminate his asylum grant on April 8, 2010. The Immigration Judge granted the DHS's motion to reopen on May 24, 2010. After a new hearing following reopening, the Immigration Judge determined that the DHS met its burden of establishing, by a preponderance of the evidence, that there was fraud in the respondent's application such that he was not eligible for asylum at the time it was granted. The Immigration Judge therefore terminated the respondent's grant of asylum.

## II. ISSUES

The primary questions before us are (1) whether the DHS must prove that an alien knew of the fraud in his asylum application in order for the grant of asylum to be terminated, and (2) what kind of showing the DHS must make in order to demonstrate that the fraud was such that the alien was not eligible for asylum at the time it was granted.

## III. STATUTORY AND REGULATORY AUTHORITY

In *Matter of A-S-J-*, 25 I&N Dec. 893 (BIA 2012), we explained the statutory and regulatory framework governing the termination of an alien's asylum status. As noted in that decision, the statute identifies reasons for which a grant of asylum may be terminated, and the implementing regulations provide two avenues for termination, one before the DHS and the other before an Immigration Judge. *Id*. at 895−98; *see also* section 208(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1158(c)(2) (2012); 8 C.F.R. § 1208.24.[1] If an Immigration Judge or the Board granted asylum to the alien, the DHS may seek reopening for the purpose

---

[1]   The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has held that although Congress conferred authority on both the Attorney General and the DHS to grant asylum, the authority to terminate asylum was given solely to the Attorney General and that the regulations allowing the DHS to terminate asylum are therefore ultra vires. *Nijjar v. Holder*, 689 F.3d 1077, 1085−86 (9th Cir. 2012). The holding in *Nijjar* is not applicable here since the respondent's asylum status was terminated by the Immigration Judge under the authority delegated by the Attorney General. Significantly, however, the court observed that although fraud in the application is not one of the grounds expressly mentioned in section 208(c)(2) of the Act as a ground for termination of asylum, the statute does provide that the Attorney General may establish "additional limitations" on an alien's eligibility for asylum by regulation. *Id.* at 1082 & n.22 (quoting section 208(b)(2)(C) of the Act).

of requesting that asylum be terminated.  8 C.F.R. § 1208.24(f).  In such a reopened proceeding, the DHS bears the burden of proving, by a preponderance of the evidence, one or more of the grounds for termination set forth in 8 C.F.R. § 1208.24(a).  8 C.F.R. § 1208.24(f).  Under 8 C.F.R. § 1208.24(a)(1), a grant of asylum may be terminated if "[t]here is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted."

## IV.  ANALYSIS

The respondent raises three arguments on appeal.  First, he alleges defective service of the DHS's motion to reopen.  Second, he argues that the DHS must prove that he knowingly committed fraud in his asylum application in order to terminate his asylum grant.  Third, he argues that the Immigration Judge erred in not adjudicating his application for deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").

### A.  Defective Service

The respondent's arguments regarding defective service of the DHS's motion to reopen are not persuasive.  The certificate of service for the DHS's motion indicates that it was mailed to the respondent at a Flushing, New York, address.  In the motion, the DHS explained that in 2007, the respondent indicated in correspondence to the DHS that his new address was in Flushing, New York.

On appeal, the respondent argues that the DHS should have used the Jamaica, New York, address that he provided on his adjustment application, which the Immigration Judge confirmed on the record.  However, because the respondent's adjustment application was filed in 2005, the address listed on the 2007 correspondence was the more recent of the two addresses.  The Immigration Judge did confirm the respondent's Jamaica, New York, address on the record, but she did so at a hearing held on August 19, 2010, several months after the DHS's motion to reopen was filed on April 8, 2010.  In addition, the respondent's change of address form reflecting his new address was not filed with the court until August 4, 2010.

Because it appears from the record that the DHS mailed its motion to reopen to the most recent address provided for the respondent, we conclude that the respondent has not established defective service.  Lastly, we note

that the respondent did not challenge the service of the motion to reopen in his reopened proceedings, during which he was represented by counsel.

## B. Termination of Asylum

Before addressing the respondent's argument that his asylum status cannot be terminated without a showing that he knowingly committed fraud in his application, we will summarize the evidence of fraud submitted by the DHS and addressed by the Immigration Judge.

In 2009, attorneys in the law firm that represented the respondent regarding his asylum application were convicted of violating 18 U.S.C. § 1546 (2006). Specifically, regarding the respondent's case, his former attorney was found guilty of making false statements in his asylum application and of aiding and abetting another in doing the same "relating to a medical certificate submitted in support of [his] application." One of the documents alleged to be false was a "[m]edical certificate of [a] doctor in India dated 9/10/01 submitted to EOIR in support of [the respondent's] application." The respondent's asylum application included three letters in the form of medical certificates from a doctor in India, one of which was from 2001.

The DHS also submitted the report of a DHS investigation in India and presented the testimony of a Foreign Service National Investigator. According to the report and the investigator's testimony, the doctor denied issuing the medical certificate in question, stating that it was not on his letterhead and did not contain his signature. The investigation concluded that the letter was fraudulent. The Immigration Judge found the investigator to be credible and determined that neither he nor the doctor had any incentive to give false information. We discern no clear error in the Immigration Judge's determination that the respondent's explanation—that the doctor lied about treating him because he did not want to go to court or get into trouble—does not convincingly rebut the DHS's evidence concerning the fraudulent nature of the medical certificate submitted in support of the respondent's asylum application.

The Immigration Judge found further evidence of fraud in the respondent's asylum application. A DHS Group Supervisor who was involved in the investigation and trial of the respondent's former attorney testified that she performed phrase searches on about 300 asylum narratives. According to her testimony, certain characteristics were common to these narratives, such as the applicant's claim to have been beaten "until I lost consciousness" without mention of any blood or bleeding. The Immigration Judge noted that these narratives were present in the respondent's asylum statement.

Next, the Immigration Judge discussed two affidavits from individuals in India that the respondent had submitted in support of his asylum application. They were signed on the same date and their wording was identical. According to a notation by the respondent's former attorney in his working file, the respondent was asked to obtain another affidavit from one of the individuals because it had "to be worded differently" from the other affidavit. The respondent subsequently obtained and submitted such an additional affidavit. The Immigration Judge concluded that this scenario was "highly suggestive of fraud."

Lastly, the Immigration Judge identified an inconsistency between the testimony of the Foreign Service National Investigator and a sworn statement by a friend that the respondent submitted during his reopened proceedings. The respondent's friend claimed that after being beaten, he stayed at the same hospital as the respondent for an extended period of time. However, the investigator testified that the doctor he interviewed had informed him that patients could only stay overnight for emergencies and would be referred to a city hospital for longer treatment.

On appeal, the respondent appears to concede that the criminal verdict against his former attorney establishes that the medical certificate from the doctor was fraudulent and that his attorney was aware of its fraudulent nature. He argues, however, that he had no knowledge of the fraud in his asylum application, which he contends the DHS must prove in order to terminate his grant of asylum.

The respondent's claim that the DHS must prove that he knowingly committed fraud in his asylum application has no support in the regulations. As previously noted, an Immigration Judge may terminate a grant of asylum if the DHS establishes by a preponderance of the evidence that "[t]here is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted." 8 C.F.R. § 1208.24(a)(1), (f). We interpret the regulations to require two showings by the DHS: (1) that there was fraud in the alien's asylum application and (2) that the fraud was such that the alien was not eligible for asylum at the time it was granted.

The regulations do not require that the DHS must prove that the alien had knowledge of the fraud.[2] If the intent of the regulation was to require proof of the asylum applicant's knowing fraud, such language could easily have been included. The absence of any reference in the regulation to the alien's involvement in, or knowledge of, the fraud strongly indicates that

---

[2]  We find the regulation in this respect to be at least ambiguous, if not clearly contrary to the dictum in *Matter of A-S-J-*, 25 I&N Dec. at 897. *See infra* p. 336.

the relevant inquiry is only whether there was fraud in the application, regardless of whether the alien was a knowing participant.

Similar language is used to exempt the DHS from the time and number limitations on motions to reopen when seeking reopening based on "fraud in the original proceeding or a crime that would support termination of asylum." 8 C.F.R. §§ 1003.2(c)(3)(iv), 1003.23(b)(1) (2013); *see also Matter of A-S-J-*, 25 I&N Dec. at 897 (stating that under the regulations, the DHS is not subject to the time and number limitations where a motion to reopen is based on fraud that would support termination of asylum, but finding that the motion must be based on "evidence that is material and was not previously available"). Under the plain language of these motions regulations, the inquiry is only whether there was "fraud in the original proceeding," so they also have no requirement that the alien be personally involved in or aware of the fraud.

In support of his argument that the DHS must prove that he knew of the fraud, the respondent relies on *Ntangsi v. Gonzales*, 475 F.3d 1007 (8th Cir. 2007). In that case, the United States Court of Appeals for the Eighth Circuit held that to terminate a grant of asylum in reopened proceedings, the DHS must prove by a preponderance of the evidence that (1) the alien committed fraud in his or her asylum application, (2) the alien knew of the fraud, and (3) the fraud was such that the alien was not eligible for asylum at the time it was granted. *Id.* at 1012−13. The court found that neither the Immigration Judge nor the Board placed the burden of proving fraud on the DHS or addressed the question whether the alien knew that a certain aspect of her testimony was false. It therefore remanded to the Board to apply the proper standard. *Id.*

In holding that the DHS must show that the alien knew of the fraud, the court relied on an earlier Eighth Circuit case where the Immigration Judge was found to have improperly terminated an asylum grant. *Id.* (citing *Hailemichael v. Gonzales*, 454 F.3d 878, 885 (8th Cir. 2006)). The DHS had moved to reopen removal proceedings and terminate the alien's grant of asylum in that case, arguing that, contrary to her asylum application and testimony, her husband was not imprisoned in Ethiopia. *Hailemichael v. Gonzales*, 454 F.3d at 880−81. The court determined that the Immigration Judge "never required DHS to prove by a preponderance of the evidence that Hailemichael committed fraud." *Id.* at 885. It further held that the DHS could not meet its burden unless it could show that the alien knew at the time she testified that her husband was not, or had not been, imprisoned. *Id.*

In reaching this conclusion, the court cited case law regarding adverse credibility, as well as the traditional definition of fraud used by the Eighth Circuit and the Board, both of which generally require that the alien know

of the falsity in a document or statement. *Id.* Accordingly, the court remanded the matter to the Board with instructions to determine whether the evidence adduced by the DHS in support of its motion to reopen tended to prove that the alien committed fraud in her earlier asylum application. *Id.*

We respectfully disagree with the Eighth Circuit's holdings that the DHS must establish that an alien "committed fraud" in his or her application and knew of the fraud in order to terminate a grant of asylum. *Ntangsi v. Gonzales*, 475 F.3d at 1012; *Hailemichael v. Gonzales*, 454 F.3d at 885. Under the law of the Ninth Circuit, which has jurisdiction over these proceedings, the submission of an allegedly fraudulent document is not necessarily determinative of an alien's credibility, especially when there is no indication or finding by the Immigration Judge that the alien knew the document was fraudulent. *See, e.g.*, *Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004). Similarly, to be inadmissible on the basis of fraud or willful misrepresentation, an alien must know that the representation was false.[3] *See Forbes v. INS*, 48 F.3d 439, 442 (9th Cir. 1995) (stating that knowledge of the falsity of a representation satisfied the statutory requirement that a misrepresentation was deliberate and voluntary); *see also Matter of Tijam*, 22 I&N Dec. 408, 424 (BIA 1998) (Rosenberg, concurring and dissenting) ("Fraud requires that the respondent know the falsity of his or her statement . . . ."); *Matter of G-R-*, 7 I&N Dec. 508, 510 (BIA 1957) ("Fraud consists of false representation or concealment of a material fact, made with knowledge of its falsity . . . .").

But the question whether an alien is credible or has made a fraudulent misrepresentation is different from the situation in this case. Here, the regulatory language states that the DHS must establish "fraud in the alien's application," but it does not specify that the alien must have been personally involved in or aware of the fraud. 8 C.F.R. § 1208.24(a)(1). The existence of fraud in an asylum application is a serious matter that undermines the integrity of the entire asylum process. We therefore doubt that Congress intended an asylum application containing fraud to be immune from termination if the alien would have been ineligible at the time it was granted, even if he or she was not complicit in the fraud.

The Eighth Circuit's holdings in *Ntangsi* and *Hailemichael* are not binding in this case because it arises in the Ninth Circuit. Although we cited *Ntangsi* with approval in *Matter of A-S-J-*, the issue we addressed there was whether an Immigration Judge has jurisdiction to review the

---

[3] Under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2012), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible."

termination of an alien's asylum status by the DHS, not whether the DHS must prove that the alien knowingly committed fraud in the asylum application in order to terminate a grant of asylum. *Matter of A-S-J-*, 25 I&N Dec. at 895, 897. Therefore, any reliance on *Ntangsi* in our decision was dictum, which is not binding on us here and which we now disavow.[4]

Accordingly, based on the plain language of 8 C.F.R. § 1208.24(a)(1), we conclude that the regulations do not require the DHS to establish, for purposes of showing that there was fraud in an alien's asylum application, that the alien knew of the fraud. In this case, the DHS submitted strong evidence of fraud in the respondent's asylum application. Moreover, the respondent has apparently conceded that his former attorney was aware that one of the medical documents supporting his application was fraudulent. We therefore agree with the Immigration Judge that the DHS met its burden of establishing, by a preponderance of the evidence, that there was fraud in the respondent's asylum application.

That does not end our inquiry, however, because the regulations also include a second step that requires the DHS to prove that the fraud in the alien's asylum application was "such that he or she was not eligible for asylum at the time it was granted."[5] 8 C.F.R. § 1208.24(a)(1); *see also Matter of A-S-J-*, 25 I&N Dec. at 896−97. Thus, a showing of fraud in an alien's asylum application is insufficient alone to support the termination of an asylum grant. If an Immigration Judge determines that an alien was eligible for asylum at the time it was granted, despite the fraud in his or her application, then the asylum grant cannot be terminated under 8 C.F.R. § 1208.24(a)(1).[6] For example, an unscrupulous attorney might submit a fraudulent document in an effort to enhance an alien's otherwise meritorious asylum claim. The grant of asylum would not be terminated because of the attorney's fraud unless the DHS also demonstrated that the fraud was such that the alien was not eligible for asylum at the time it was granted.

---

[4] We have no occasion to decide here whether to follow *Ntangsi* and *Hailemichael* in cases arising in the Eighth Circuit.

[5] We emphasize that this inquiry is generally limited to ascertaining whether the record at the time of the fraud indicates that the alien was eligible for asylum notwithstanding the fraud. Neither the alien nor the DHS is permitted to "start over" and make a new record in support of or in opposition to the asylum claim.

[6] The respondent's knowledge of the fraud may become relevant at this second stage of the analysis because to determine if an alien was eligible for asylum at the time it was granted, an Immigration Judge must assess the alien's credibility with regard to his overall claim.

In this case, the Immigration Judge extensively reviewed the evidence of fraud in the record and correctly concluded that the DHS met its burden of establishing fraud in the respondent's application. However, although the Immigration Judge summarily concluded that this fraud was such that the respondent was not eligible for asylum at the time it was granted, she did not adequately consider whether the respondent was eligible for asylum in 2003 but for the fraud in his application. For example, the Immigration Judge did not make an explicit credibility finding or determine whether the respondent knowingly submitted fraudulent documents that were relevant to such a finding. Because this analysis requires fact-finding, we cannot conduct the necessary analysis on appeal. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2013). We will therefore remand the record to the Immigration Judge to determine whether the DHS established, by a preponderance of the evidence, that the fraud in the respondent's application was such that under the true facts, he was not eligible for asylum at the time it was granted.

## C. Protection Under the Convention Against Torture

Lastly, the respondent argues that the Immigration Judge erred in not considering whether he is eligible for protection under the Convention Against Torture. We are unpersuaded by this contention. The DHS sought reopening for the purpose of terminating the respondent's asylum grant. *See Matter of A-S-J-*, 25 I&N Dec. at 897 (explaining that "if the Immigration Judge or the Board granted asylum to the alien, the DHS may seek reopening for the purpose of requesting that asylum be terminated"); 8 C.F.R. § 1208.24(f). The Immigration Judge granted the DHS's motion and, upon reopening, the respondent filed written pleadings denying any allegations of fraud and indicating that the relief he sought was termination of proceedings. Because the respondent did not seek relief under the Convention Against Torture in his reopened proceedings, we find no error by the Immigration Judge in not considering that form of relief. The respondent has not submitted any previously unavailable, material evidence of eligibility for relief on appeal that might justify a remand. *See* 8 C.F.R. § 1003.2(c)(1), (4). Nonetheless, in light of our conclusion that a remand is necessary to further address the termination of the respondent's grant of asylum, the respondent may pursue relief under the Convention Against Torture on remand if he so desires.

## V. CONCLUSION

In sum, we conclude that to terminate a grant of asylum, the DHS must prove, by a preponderance of the evidence, that (1) there was fraud in the

alien's asylum application and (2) the fraud was such that the alien was not eligible for asylum at the time it was granted. With regard to the first criterion, the DHS is not required to prove that the alien knew of the fraud in his or her asylum application. The Immigration Judge properly found that the DHS met its burden to establish by a preponderance of the evidence that there was fraud in the respondent's asylum application. However, we find that a remand is necessary for the Immigration Judge to conduct a more thorough analysis to determine whether the DHS met its burden under the second requirement to establish that under the true facts, the respondent was not eligible for asylum at the time it was granted. Accordingly, the respondent's appeal will be dismissed in part and the record will be remanded to the Immigration Judge for further proceedings.

**ORDER:** The respondent's appeal is dismissed in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.