**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

MAY 28 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BUDDHA LO, | No. 16-72548 |
| Petitioner, | Agency No. A089-697-194 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 18, 2018
San Francisco, California

Before: GILMAN,** PAEZ, and OWENS, Circuit Judges.

Buddha Lo petitions for review of the Board of Immigration Appeals'

("BIA") decision terminating an earlier grant of asylee status due to fraud and

denying Lo's second application for asylum, withholding of removal, and relief

pursuant to the Convention Against Torture ("CAT"). We have jurisdiction under

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Ronald Lee Gilman, United States Circuit Judge for
the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

8 U.S.C. § 1252.

**1.** The Immigration Judge ("IJ") did not violate Lo's right to due process by proceeding to a decision despite a recording error during the testimony of Department of Homeland Security ("DHS") witness Officer Roseman.

To prevail on a due process challenge, Lo "must show error and substantial prejudice." *Lata v. I.N.S.*, 204 F.3d 1241, 1246 (9th Cir. 2000). To show prejudice, Lo must present "plausible scenarios in which the outcome of the proceedings would have been different" if not for the error. *Tamayo-Tamayo v. Holder*, 725 F.3d 950, 954 (9th Cir. 2013) (citation omitted). Officer Roseman testified—and was cross-examined by Lo's counsel—but her testimony was not preserved in the transcript. Upon the IJ's order, counsel for Lo presented a written summary of Officer Roseman's testimony, to which the government did not object. Lo does not allege that the outcome of the proceedings would have been different had Officer Roseman's testimony been properly recorded in the transcript, so his due process claim fails.

**2.** Previously, Lo applied for and received asylum based on persecution he described having experienced in Nepal because of his political beliefs. Later, DHS sought to terminate Lo's asylum status based on fraud because the declaration Lo submitted in support of his asylum application was substantially similar to the declarations of other Nepali asylum seekers.

2

Asylum status may be terminated if DHS establishes by a preponderance of the evidence that there is "a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted." 8 C.F.R. §§ 1208.24(a)(1), (f); *see Nijjar v. Holder*, 689 F.3d 1077, 1085 (9th Cir. 2012).

Here, the IJ cited *Matter of P-S-H-*, 26 I. & N. Dec. 329, 329 (BIA 2014), which held, "DHS is not required to establish that an alien knew of the fraud in his or her asylum application." Contrary to the government's arguments, however, the Eighth Circuit's reasoning that "fraud requires that the applicant actually know that the factual assertion was false" is a better fit with the regulations. *Hailemichael v. Gonzales*, 454 F.3d 878, 885 (8th Cir. 2006); *see also Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004) (recognizing that fraud in an asylum application is not automatically fatal to the application, especially without a finding that the applicant knew of the fraud); *Matter of G-R-*, 7 I. & N. Dec. 508, 510 (BIA 1957) ("Fraud consists of false representation or concealment of a material fact, made with knowledge of its falsity and with intent to deceive the other party.").

We need not resolve whether fraud requires knowledge in this case because the IJ made an adverse credibility finding as to how Lo prepared his initial asylum application, and the IJ thus determined that Lo knew the statements in that application were fraudulent. Substantial evidence supports that adverse credibility finding. Specifically, the IJ found Lo's testimony that he drafted his declaration in

3

a communal bathroom and ripped up each draft in the bathroom "implausible." The IJ concluded that Lo would not have been eligible for asylum at the time of his application without the existence of fraud. Therefore, Lo's challenge to the termination of his asylee status fails.

**3.** Substantial evidence also supports the IJ's adverse credibility finding as to Lo's new application for asylum, withholding of removal, and CAT relief.

With his new application, Lo submitted the same declaration as in his initial application. The declaration was substantially similar to other Nepali asylum-seekers' declarations. "[S]ignificant similarities between statements submitted by applicants in different proceedings" can be considered when making an adverse credibility determination if the IJ provides certain procedural protections. *Matter of R-K-K-*, 26 I. & N. Dec. 658, 659 (BIA 2015). Lo was provided the necessary procedural protections but could not credibly provide an innocent explanation for the similarities.

Additionally, the documentary evidence that Lo submitted with his new application did not "independently establish facts essential to . . . [his] asylum claim." *Al-Harbi v. I.N.S.*, 242 F.3d 882, 891 (9th Cir. 2001). The IJ did not err in finding the identical wording in the letters of support suggestive of fabrication or copying—especially where Lo's testimony implied the letter writers had no personal knowledge of the events they described. The hospital records referenced

4

a bicycle accident rather than the violent attack Lo described. Finally, although the country-conditions documents show Maoist activity in Nepal, they did not demonstrate that Lo would be the target of Maoists.

The evidence in the record does not compel us to find that Lo met his burden of proof for any form of relief.

**PETITION FOR REVIEW DENIED.**